## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 05 2017, 9:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Ronnie Jones
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ronnie Jones,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

December 5, 2017

Court of Appeals Case No.
71A03-1611-PC-2611

Appeal from the St. Joseph
Superior Court

The Honorable Elizabeth C.
Hurley, Judge

Trial Court Cause No.
71D08-1207-PC-32

**Najam, Judge.**

# Statement of the Case

Ronnie Jones appeals from the post-conviction court's denial of his petition for post-conviction relief. Jones raises five issues for our review, which we restate as the following two issues:

1.  Whether he was denied the effective assistance of trial counsel.

2.  Whether the post-conviction court erred when it denied Jones' request to subpoena additional witnesses to testify at his hearing on his petition for post-conviction relief.

We affirm.

# Facts and Procedural History

The facts underlying Jones' convictions were stated by this court on direct appeal:

> On February 28, 2010, at approximately 12:30 a.m., George Ladell Howell went to visit Jones. Another man, Anthony Williams ("Tony") was at Jones' residence, along with his sister and Jones' girlfriend, Grace Williams. While drinking alcoholic beverages, the three men played "chess and stuff." (Tr. 14). At one point, Howell heard Grace call out to Tony from another room, and Tony and Jones went back to the room to talk with her. Howell soon heard "scuffling and stuff," and he decided to leave. *Id.*
>
> Howell was prevented from leaving by Jones' large dog, which grabbed Howell by the hand and held him. Howell then saw Jones and Tony enter the room. Jones grabbed a knife and cut Tony, who then ran out the back door. Howell requested that

Jones call the dog off him; however, instead of procuring Howell's release, Jones brandished a large knife. Howell pulled his hand out of the dog's mouth and grabbed a knife, but Jones pulled the knife from Howell's hand and began stabbing him. Howell attempted to fight off Jones with a skillet, but Jones continued to stab him. Howell began having trouble breathing and everything began to appear hazy to him. He then lost consciousness.

While Jones was stabbing Howell, someone called 911 and hung up. South Bend Police Officer Jamil Elwaer was dispatched to Jones' apartment; and as he arrived, he heard screaming coming from the residence. Officer Elwaer could see through the glass portions of the doors to the residence and observed Jones wielding a knife reverse grip style in his right hand. Several times, he heard Jones yelled "f***ing n****r, I got you . . . ." (Tr. 28). As Officer Elwaer went up the steps, he yelled for Jones to drop the knife, but Jones refused. Officer Elwaer heard another male voice say, "[H]elp me, I'm dying." (Tr. 30).

At about this time, Officer Elwaer saw Grace appear "out of nowhere," step between the officer and Jones, and begin to manipulate the lock on the inside door. Officer Elwaer then saw Jones lunge at the prone body of Howell, making several downward stabbing motions with the knife. Officer Elwaer observed that Howell looked helpless and that "[t]here was blood gushing out all over the place from his upper torso." (Tr. 34). Officer Elwaer determined to protect Howell by shooting Jones but was prevented from doing so because Grace was in the way.

Soon thereafter, Jones disappeared into another room and came back after a few seconds. Jones unlocked the door, and Officer Elwaer and other officers subdued him as he tried to run away. During and after the struggle, Jones kept screaming that he hoped Howell would die.

Officers began assisting Howell, who had sustained thirty-seven knife wounds. Howell was finally taken by ambulance to the hospital, where he received treatment that saved his life.

On March 10, 2010, the State charged Jones with Count 1, attempted murder. The charge was later amended to include a habitual offender count.

* * *

The jury subsequently found Jones guilty of attempted murder, and he admitted that he was an habitual offender.

Later, Jones' new counsel filed a "Motion for Judgment N.O.V. Or Alternatively For A New Trial," alleging that Jones' trial counsel was ineffective because counsel had inadvertently left the microphone at defense counsel's desk in the "on" mode. (Jones' App. 11). He further alleged that the jury and others in the courtroom had overheard confidential conversations between Jones and his counsel. After hearings on the motion, the trial court denied the motion.

After a sentencing hearing, the trial court found no mitigating circumstances. As aggravating circumstances, the trial court found the violent trend of Jones' criminal history and the nature and circumstances of the crime. The trial court sentenced Jones to forty years imprisonment for attempted murder and enhanced the sentence by thirty years because of the habitual offender finding.

*Jones v. State*, No. 71A05-1011-CR-740, 2011 WL 3300331, at *1-2 (Ind. Ct. App. Aug. 2, 2011). On direct appeal, Jones contended that the trial court committed fundamental error when it did not declare a mistrial after the

investigating officer gave certain testimony, that the trial court abused its discretion when it denied his motion for a new trial, and that the trial court acted improperly when it used his criminal history as an aggravating circumstance while it used two prior convictions as the basis for the habitual offender enhancement. This court affirmed his conviction, habitual offender adjudication, and sentence.

[4] Thereafter, Jones, *pro se*, filed a petition for post-conviction relief and alleged that he was denied the effective assistance of trial counsel. Jones filed with the post-conviction court a request that it issue subpoenas for several witnesses including Grace; Grace's daughter, Donna May; Tony; Don Haywood, an investigator with the prosecutor's office; Detective Ron Nowicki; and court-appointed public defender Brian May. The court held a hearing on Jones' request on October 15, 2015. On April 20, 2016, the post-conviction court issued an order that granted Jones' request to issue a subpoena to May, but the court denied his request to issue subpoenas to the other witnesses because it found that a "Post-Conviction Relief evidentiary hearing is not an opportunity to retry the case." Appellant's App. Vol. II at 153. Following an evidentiary hearing on May 6, 2016, the post-conviction court entered detailed findings of fact and conclusions of law denying Jones' petition for relief. This appeal ensued.

## Discussion and Decision

[5] Jones appeals the post-conviction court's denial of his petition for post-conviction relief. Our standard of review is clear:

The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004) (citations omitted). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (internal quotation omitted).

*Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014) (alteration original to *Campbell*).

### *Issue One: Effectiveness of Trial Counsel*

Jones first contends that he received ineffective assistance from his trial counsel, Brian May.

When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment."

*McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052).

*Id.* at 274.

There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Counsel is afforded considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.

*Stevens v. State*, 770 N.E.2d 739, 746-47 (Ind. 2002) (citations omitted).

Jones alleges that May committed four errors, namely: May failed to investigate the facts and circumstances of the case; he failed to interview Jones and other material witnesses; he failed to object to allegedly perjured statements and testimony of Howell; and he failed to advocate Jones' claim of self-defense. We address each contention in turn.

### Professional Investigation

Jones first contends that May's performance was deficient because May failed "to investigate the facts and circumstances of the case." Appellant's Br. at 24. Jones alleges that, because May did not conduct a professional investigation,

May did not learn and, thus, did not present to the jury statements by Grace and Tony that would have disputed aspects of Howell's testimony. "While it is undisputed that effective representation requires adequate pretrial investigation and preparation, it is well settled that we should resist judging an attorney's performance with the benefit of hindsight. Accordingly, when deciding a claim of ineffective assistance for failure to investigate, we apply a great deal of deference to the counsel's judgment." *McKnight v. State*, 1 N.E.3d 193, 200-01 (Ind. Ct. App. 2013) (internal citations omitted). Further, "success on the prejudice prong of an ineffectiveness claim requires a showing of a reasonable probability of affecting the result." *Id.* (quoting *Woods v. State*, 701 N.E.2d 1208, 1214 (Ind. 1998), *cert. denied* (1999)).

[9] The post-conviction court concluded, and we agree, that May "conducted a reasonable pretrial investigation" into the facts of the case. Appellant's App. Vol. II at 110. At the May 6, 2016, evidentiary hearing, May testified that he interviewed Jones at the jail and discussed the case and discovery with him. He also testified that, "[b]ased on my conversations with [Jones] at the jail[,] I spoke to [Grace] any number of times." Tr. 05-06-2016 at 14. Additionally, May testified that Grace "called me maybe once a week or more." *Id.* at 20. He further testified that, prior to trial, he reviewed all of the evidence, such as crime scene photographs and "other state discovery." *Id.* at 15.

[10] Jones alleges that, had May conducted a professional investigation, May would have learned that Grace had removed Howell from her apartment several weeks prior to the incident due to sexual misconduct and told him to never return,

which would have disputed Howell's testimony that Jones had invited Howell over to play chess. It is unclear from the record whether Grace told May that she had kicked Howell out of her apartment prior to the night of the stabbing. However, it is clear from the record that May spoke with Grace numerous times about the case. And there is nothing in the record to show that, had May spoken with Grace more than he already had, that she would have provided him with this additional information.

[11] Jones also alleges that, had May conducted a professional investigation, May would have learned that Tony had told Investigator Haywood that Jones had not stabbed him, which would have disputed Howell's statements that Jones stabbed Tony before he stabbed Howell. It is apparent from the trial transcript that May knew that Haywood had interviewed Tony. During May's direct examination of Investigator Haywood at Jones' trial, May asked whether Tony was present the night of the incident. In response, the State asked to approach the bench, and the judge held a sidebar conference. During the sidebar conference, the State asked for a proffer of the witness to determine what May anticipated Investigator Haywood would say. In response, May stated that "[h]e is going to tell me that Tony . . . didn't suffer any wounds to his person . . . ." Tr. 06-29-2010 at 92. After the conclusion of the sidebar conference, May elicited testimony from Investigator Haywood that, from the course of his investigation and to the best of his knowledge, Tony was not present during the incident. That questioning indicated that May had learned that Tony told investigator Haywood that Jones had not stabbed him.

[12]     May met with Jones prior to trial and spoke with Grace several times. Further, May had learned that Haywood interviewed Tony and he questioned Haywood about this interview during trial. Therefore, Jones has not shown deficient performance on this issue.

*Professional Interviews*

[13]     Jones next contends that May's performance was ineffective because May failed to interview Jones, Grace, Donna, and Tony. Specifically, Jones contends that May "failed to conduct an in-depth, detailed, professional interview" of him and thus "failed to understand that Jones had multiple bumps, bruises, and knife cuts after being assaulted by [Howell] . . . ." Appellant's Br. at 29. However, as discussed above, May testified at the post-conviction hearing that he met with Jones while Jones was at the jail to interview him and to discuss the case with him. And during Jones' trial, May elicited Jones' testimony that Howell grabbed a bottle and started hitting Jones with it. It is apparent that May had conducted an interview of Jones prior to his trial and that Jones' larger evidentiary point was put to the jury.

[14]     Jones further contends that May "failed to conduct a professional interview of [Grace], who would have informed counsel that when she came out of her bedroom she saw [Howell] sitting on the front door and that he was wearing only his underwear." *Id*. But, again, May testified at the post-conviction hearing that he spoke with Grace several times prior to trial. And it is clear from the trial record that May spoke with Grace specifically about whether Howell was wearing pants during the incident. In particular, May asked Grace

at trial: "And did you see if [Howell] had on long pants or not?" Tr. 06-29-2012 at 97. Grace responded: "No, he had on underwear." *Id.* As such, it is clear from the record that May had interviewed Grace prior to trial and had learned that she saw Howell wearing only his underwear. May did not fail to conduct an interview of Grace.

Jones also asserts that May failed to conduct a professional interview of Donna and Tony. During the post-conviction hearing, Jones asked May if he had interviewed Donna or Tony. May did not directly answer the question, but he conceded that those names did not sound familiar.

Nonetheless, the only information Jones contends Donna would have provided is that she was with Grace when they found Howell's pants, which were uncut and without any bloodstains. Jones asserts that that information would have been contradictory to Howell's testimony that he was wearing his pants when Jones stabbed him. However, Jones testified at trial that he woke up and saw Howell standing over him in just his underwear. Additionally, Grace testified at Jones' trial that Howell did not have on pants during the incident. Therefore, the question of whether Howell was wearing pants or underwear had already been presented to the jury, and Donna's testimony would not have added anything significant to Jones' defense. Jones has not shown that he was prejudiced by May's failure to interview Donna prior to trial.

Finally, Jones asserts that, had May interviewed Tony, May would have learned that Tony had been interviewed by Investigator Haywood and that

Tony had not been stabbed by Jones. Again, Jones asserts that that information contradicted Howell's testimony that Jones stabbed Tony before he stabbed Howell. However, as discussed above, it is apparent from the trial transcript that May already had that information. During May's direct examination of Investigator Haywood, May asked whether Tony was present the night of the incident. During a sidebar conference and in response to the State's request for a proffer of the witness to determine how May anticipated Haywood would answer the question, May stated that "[h]e is going to tell me that Tony . . . didn't suffer any wounds to his person . . . ." Tr. 06-29-2010 at 92. Further, May elicited testimony from Investigator Haywood that, from the course of his investigation and to the best of his knowledge, Tony was not present during the incident. Because May had already gathered information that Tony was not present and had not been stabbed that evening, any failure to conduct a formal interview of Tony did not prejudice Jones.

*Testimony of Howell*

Jones further contends that he was denied the effective assistance of counsel because May did not take a pretrial deposition of Howell and because May did not adequately cross-examine Howell. Specifically, Jones asserts that May failed to challenge Howell's testimony with evidence that, approximately one month prior to the incident, Grace had told Howell to leave and never return; that Tony had not been stabbed by Jones; that Jones told Howell and Tony to leave the apartment at approximately 2:00 A.M.; and that Howell was attacked by Grace's dog when he tried to enter her bedroom.

[19] In regards to May's decision to not depose Howell prior to the trial, this amounts to an attack on May's strategy. We agree with the post-conviction court that Jones did not overcome "the presumption that there were strategic reasons for Attorney May's decisions at trial." Appellant's App. Vol. II at 110. During the evidentiary hearing, May testified that an attorney can "tip your hand and depose somebody or you can cross[-]examine them at trial. I prefer the second method." Tr. 05-06-2016 at 63. It is apparent that May made a strategic decision when he decided to not tip his hand and depose Howell prior to the trial. Further, May cross-examined Howell and asked him if there was any reason why he had his pants off that evening, asked if Jones ever told him to leave the apartment, asked if he ever went to the apartment uninvited, asked about Howell's prior burglary conviction, and questioned him on whether he had told police that Tony had been injured. Jones has not shown either deficient performance or prejudice on this issue.

[20] Jones further asserts that May should have objected to Howell's testimony because the testimony was perjured.[1] This argument is without merit. To support his assertion that Howell perjured himself, Jones claims that Grace told Howell to leave the apartment and never return approximately one month before the incident. Jones claims that this information conflicted with Howell's testimony that he was invited to play chess at the apartment. Grace testified at

---

[1] To the extent Jones makes a separate claim of prosecutorial misconduct because, as he claims, the State knowingly elicited the perjured testimony of Howell, he has waived this argument because it was available, but not argued, on direct appeal. *See Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001).

Jones' trial, but she did not testify that she had told Howell to leave the apartment and never return. Jones also claims that Tony had never been in a fight with Jones. To contradict Howell's claim that Jones stabbed Tony before he stabbed Howell, May elicited the testimony of Investigator Haywood, who testified that Tony was not present at the apartment during the incident. May also questioned Jones about that night, and Jones was able to give his version of the events. Jones also testified that his dog would not attack on command. There was testimony at trial that conflicted with Howell's, but "contradictory or inconsistent testimony by a witness does not constitute perjury." *Coleman v. State*, 946 N.E.2d 1160, 1167 (Ind. 2011) (quoting *Timberlake v. State*, 690 N.E.2d 243, 253 (Ind. 1997)). Even though there was testimony at trial that conflicted with Howell's testimony, Jones he has not presented any proof that Howell perjured himself. As such, Jones has not shown deficient performance on this issue.

### Self-Defense Claim

[21] Finally, Jones contends that May failed to "advocate the defendant's claim of self-defense[.]" Appellant's Br. at 39. The post-conviction court concluded that May's performance on this issue was not deficient at trial. As the court observed, May "cross-examined the witnesses, guided [Jones] through his testimony at trial, argued objections to the trial judge, and gave a closing statement that attempted to convince the jury that [Jones] acted in self-defense." Appellant's App. Vol. II at 109. The court further stated that "May argued a theory of defense that the jury did not accept." *Id*. We agree. May called

Jones as a witness to testify about his version of the events that happened on the night he stabbed Howell. Further, May called Grace and Investigator Haywood to testify as defense witnesses. Finally, May re-asserted Jones' self-defense claim in his closing argument. Jones has not shown deficient performance or prejudice on this issue. We hold that the post-conviction court did not err when it concluded that Jones was not denied the effective assistance of trial counsel.

### Issue Two: Denial of Subpoena Request

Jones next contends that the post-conviction court abused its discretion when it denied his request for the issuance of subpoenas to certain potential witnesses. To determine whether to issue subpoenas, the post-conviction court has broad discretion. *Johnson v. State*, 832 N.E.2d 985, 994 (Ind. Ct. App. 2005), *trans. denied*. "An abuse of discretion has occurred if the court's decision is against the logic and effect of the facts and circumstances before the court." *Id*. Our Post-Conviction Rules provide, in relevant part that:

> If the pro se petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony. If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued. *If the court finds the proposed witness' testimony is not relevant and probative, it shall enter a finding on the record and refuse to issue the subpoena.*

Ind. Post-Conviction Rule 1(9)(b) (emphasis added). Here, to support his claim that he was denied effective assistance of counsel, Jones requested subpoenas

for numerous witnesses and filed an affidavit in support of his request. The witnesses he sought to subpoena included Grace, Donna, Tony, Investigator Haywood, Detective Ron Nowicki, and May.

[23] The post-conviction court issued an order that granted Jones' request to issue a subpoena to May but denied his request to issue subpoenas to the other witnesses. On appeal, Jones contends that the court's denial of the subpoenas was improper because the testimony of each witness would be relevant and probative at the post-conviction stage. We cannot agree.

[24] Jones claimed that Grace and Donna would both testify that they had found Howell's pants at the apartment, which were not cut and did not have blood on them, contrary to Howell's testimony that he was wearing pants at the time of the incident. However, as explained above, Jones testified at trial that he woke up and saw Howell standing over him in just his underwear. Additionally, Grace testified at Jones' trial that Howell did not have on long pants, but instead, had on underwear during the incident. Therefore, the additional testimony of Grace and Donna at the post-conviction hearing would have been cumulative of the testimony presented at trial.

[25] Jones further claimed that Tony would testify that Jones did not stab him before Jones stabbed Howell, which would have disproved Howell's story that Jones stabbed Tony first. Again, that testimony of Tony would have been cumulative of the trial evidence. During May's direct examination of Investigator

Haywood, May elicited testimony that, from the course of his investigation and to the best of his knowledge, Tony was not present during the incident.

[26] Jones also asserted that Investigator Haywood would testify that, during his interview of Tony, he had learned that Jones did not stab Tony first, that he had seen Howell's pants on the couch, and that the pants did not have blood on them, all of which would have been contrary to Howell's testimony. As mentioned above, Investigator Haywood had already testified at trial that Tony was not present during the incident. As such, any testimony about Tony's presence at the apartment by Investigator Haywood at the post-conviction hearing would have been cumulative to the testimony he gave at Jones' trial. Additionally, any testimony Investigator Haywood would have given about the location of Howell's pants would have been cumulative of the testimony Grace and Jones gave at trial.

[27] Finally, Jones claimed that Detective Nowicki would testify that he had investigated the crime scene and had found Howell's pants on the couch and that the pants did not have blood on them, which would have been in conflict with Howell's testimony. As discussed above, Jones and Grace both testified at trial that Howell was not wearing pants during the incident. Again, any testimony that Detective Nowicki would have given at the post-conviction hearing would have been cumulative of the testimony Grace and Jones gave at trial.

[28] We cannot conclude that the post-conviction court abused its discretion when it denied Jones' request for subpoenas of several potential witnesses. Jones' summaries of anticipated testimony amounted to evidence that was cumulative of trial evidence. Because the proposed witnesses' testimony was not relevant and probative, the court was not required to issue the subpoenas.

[29] Affirmed.

Mathias, J., and Barnes, J., concur.